# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
APR 23 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

19MJ1657

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No.
Apple iPhone 8 Plus )
IMEI: 356110090999506 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the ___SOUTHERN___ District of ___CALIFORNIA___ *(identify the person or describe property to be searched and give its location):*
See Attachment A.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ___8___ U.S.C. § ___1324___, and the application is based on these facts:
See attached affidavit of CBPO Carlo Nazareno

☐ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Carlo Nazareno, Customs and Border Protection Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4/23/19

*Judge's signature*

City and state: San Diego, California       Mitchell D. Dembin, U.S. Magistrate Judge
*Printed name and title*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>(1) Apple cellular telephone<br>Model: iPhone 7 Plus<br>Serial: F2LTHZVYHX9F<br>IMEI: 355842086675259<br><br>(2) Apple cellular telephone<br>Model: iPhone 8 Plus<br>Serial: F19WL22PJWLK<br>IMEI: 356110090999506 | Case No.:<br><br>AFFIDAVIT OF U.S. CUSTOMS AND BORDER PROTECTION OFFICER CARLO NAZARENO IN SUPPORT OF SEARCH WARRANT |

## AFFIDAVIT

I, Carlo Nazareno, United States Customs and Border Protection ("CBP") Officer with the Department of Homeland Security, Customs and Border Protection, having been duly sworn, hereby state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for a search warrant in furtherance of an alien smuggling investigation conducted by CBP Officers for the following target property: one Apple cellular telephone, Model iPhone 7 Plus, Serial Number F2LTHZVYHX9F, and IMEI Number 355842086675259 ("**Target Telephone #1**") and one Apple cellular telephone, Model iPhone 8 Plus, Serial Number F19WL22PJWLK, and IMEI Number 356110090999506 ("**Target Telephone #2**").

2. **Target Telephone #1** was seized from Louann COVARRUBIAS Jackson ("COVARRUBIAS") at the time of her arrest on December 29, 2018. **Target Telephone #2** was seized from Sarah Irene GUTIERREZ-Trejo

("GUTTIEREZ") at the time of her arrest on December 29, 2018. It is believed that **Target Telephone #1** and **Target Telephone #2** were used by COVARRUBIAS and GUTIERREZ, respectively, to communicate with co-conspirators, during an alien smuggling event in the Southern District of California, Case No. 19-cr-305-DMS. Probable cause exists to believe that **Target Telephone #1** and **Target Telephone #2** contain evidence relating to violations of Title 8, United States Code, Section 1324. **Target Telephone #1** and **Target Telephone #2** is currently in the possession of the Department of Homeland Security, United States Customs and Border Protection, 9495 Customhouse Plaza, San Diego, California 92154. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation. The following is based upon my personal involvement in this investigation, oral and written reports about this investigation that I have received from federal law enforcement officers, law enforcement record and intelligence checks, conversations with other law enforcement agents involved in this investigation, and my review of records obtained during this investigation.

3. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, I submit this Affidavit in support of the application to search **Target Telephone #1** and **Target Telephone #2** for and to seize, as they pertain to violations of Title 8, United States Code, Section 1324, Alien Smuggling, all communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data:

    a. tending to indicate efforts to smuggle undocumented aliens from Mexico to the United States or smuggle undocumented aliens further into the interior of the United States;

b.    tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, phone numbers that may contain electronic evidence tending to indicate efforts to smuggle undocumented aliens from Mexico to the United States or smuggle undocumented aliens further into the interior of the United States;

c.    tending to identify co-conspirators, criminal associates, or others involved in smuggling illegal aliens from Mexico to the United States or smuggling undocumented aliens further into the interior of the United States;

d.    tending to identify travel to or presence at locations involved in smuggling undocumented aliens from Mexico to the United States or smuggling undocumented aliens further into the interior of the United States, such as stash houses, load houses, or delivery points;

e.    tending to identify the user of, or persons with control over or access to, the subject phone; or

f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

## EXPERIENCE AND TRAINING

4.    I am an Officer with the United States Customs and Border Protection (CBP) within the Department of Homeland Security. I have been a CBP Officer since June 18, 2007 having completed the CBP Officer academy at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. As a result of my training and experience as a CBP Officer, I am familiar with federal criminal and immigration laws. My primary duties have been the enforcement of federal immigration and customs laws. As part of this training, I attended criminal investigation training that included course studies in, among other things, criminal law, constitutional law, search and seizures, and courtroom procedure.

5.    As a CBP Officer, I am a Federal Law Enforcement Officer within the meaning of Rule 41(b) of the Federal Rules of Criminal Procedure, that is, a government agent engaged in the enforcement of the criminal laws of the United States, and thereby

3

authorized to request issuance of federal search and seizure warrants. As an Officer with Customs and Border Protection, my responsibilities include the investigation of possible violations of Immigration and Nationality laws (Title 8, United States Code), including alien smuggling in violation of Title 8, United States Code, Section 1324, and related offenses.

6. My assignment includes investigations related to unlawful aliens and alien smuggling. In the course of my duties, I have worked as the case agent, directing specific alien smuggling and illegal entry investigations. I have worked as an officer at the San Ysidro, California Port of Entry (POE), the Otay Mesa, California POE and Tecate, California POE.

7. During my assignments, I have interviewed Defendants and witnesses relative to their illegal entry and alien smuggling. Through my observations and these interviews, I have gained a working knowledge and insight into the normal operational habits of unlawful aliens and alien smugglers, with particular emphasis on those who attempt to illegally enter or smuggle unlawful aliens into the United States from Mexico.

8. Through the course of my training, investigations, work experience, and conversations with other law enforcement personnel, I am aware that it is a common practice for alien smugglers to work in concert with other individuals, and they do so by utilizing cellular telephones, pagers and portable radios to maintain communications with co-conspirators in order to further their criminal activities. As a part of the San Ysidro Criminal Enforcement Unit (CEU), I have seen numerous telephones being used by load drivers to communicate with smugglers. Typically, load drivers transporting aliens within the United States are in telephonic contact with co-conspirators immediately prior to and following the entry of unlawful aliens into a load vehicle, at which time they receive instructions on where and when to pick up the unlawful aliens and where to deliver them.

9. Based on my training, work experience, and conversations with other law enforcement personnel, I am also aware that:

   a. Smugglers and traffickers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

   b. Smugglers and traffickers will use cellular telephones because they are able to actively monitor the progress of their illegal activities from point of origin in Mexico to point of destination in the United States.

   c. Smugglers and traffickers and their accomplices will use cellular telephones because they can easily arrange and/or discuss smuggling fees, availabilities of transportation, and costs associated with smuggled aliens.

   d. Smugglers and traffickers will use cellular telephones to direct, coordinate the transfer and acquisition of payment for smuggling and trafficking fees, request additional fees from aliens and/or their sponsors, and coordinate drivers to synchronize an exact drop off and/or pick up time of their aliens.

   e. The use of cellular telephones by smugglers and traffickers tends to generate evidence that is stored on the cellular telephones including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

10. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of alien smuggling investigations, and the opinions stated herein are shared by them.

**FACTS SUPPORTING PROBABLE CAUSE**

11. On December 29, 2018, at approximately 5:37 p.m., COVARRUBIAS and GUTIERREZ applied for entry into the United States from Mexico through the San Ysidro, California Port of Entry. COVARRUBIAS was the driver and registered

5

owner of a 2014 Honda Accord ("the vehicle") with GUTIERREZ as the front passenger. Upon inquiry by a Customs and Border Protection Officer ("CBPO"), their stated destination was San Ysidro, California with nothing to declare. During the course of the primary inspection, two concealed individuals were discovered in the trunk of the vehicle. COVARRUBIAS and GUTIERREZ were secured and sent to secondary inspection, along with the vehicle.

12. In secondary inspection, CBPOs assisted and removed the individuals from the trunk, confirmed their identities, and then determined that the individuals were citizens of Mexico without permission to enter or reside in the United States. The individuals were held as a Material Witnesses.

13. CBPOs placed COVARRUBIAS and GUTIERREZ under arrest and seized **Target Telephone #1** and **Target Telephone #2** from COVARRUBIAS and GUTIERREZ, respectively, incident to their arrests.

14. Post-arrest, COVARRUBIAS waived her *Miranda* rights and spoke with CBPOs in a videotaped interview. COVARRUBIAS denied knowledge of the individuals concealed in the trunk, but stated that GUTIERREZ had conveyed to her an opportunity to transport pharmaceutical products from the United States into Mexico for $3,000 United States currency. According to COVARRUBIAS, GUTIERREZ had learned of the job through Facebook. COVARRUBIAS and GUTIERREZ agreed to share the profit equally, and that they were to communicate via telephone with their smuggling contact, "Martin", to receive further instructions once they crossed into the United States. COVARRUBIAS was also instructed to contact "Martin" via telephone when they were seven vehicles from the inspection booth at the United States/Mexico international border, and to change entry lanes when three vehicles from the inspection booth.

15. Post-arrest, GUTIERREZ declined to make any statements to law enforcement without the presence of an attorney. However, in the process of plea

negotiations, defense counsel for GUTIERREZ proffered several pages of Facebook messages between GUTIERREZ and one of the members of the alien smuggling organization, which were translated by defense counsel from Spanish to English. In the messages, which begin on December 9, 2018, GUTIERREZ and the smuggler discuss the details of the operation, including outfitting the vehicle with a GPS tracker. The messages indicate GUTIERREZ was offered the option of smuggling either bulk currency or pharmaceutical products into Mexico, and the difference in payment for the respective types of smuggling. At one point in the conversation, GUTIERREZ sends a photograph of her California Identification Card and COVARRUBIAS' California Identification Card. The smuggler and GUTIERREZ also refer to "Martin" as a person of contact, as well as a photograph showing the vehicle in line for an inspection booth minutes approximately 15 minutes before the time of crossing.

16. In my professional training, education, and experience, alien smuggling conspiracies require planning and coordination in the days, weeks and often months prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable passenger(s). Based on this information, as well as the dates of the Facebook messages between GUTIERREZ and the smuggler, I request permission to search **Target Telephone #1** and **Target Telephone #2** for evidence dating back to December 9, 2018, up to an including through December 29, 2018.

17. Based upon my experience and training, consultation with other law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this Affidavit, I believe that information relevant to the alien smuggling activity of COVARRUBIAS and GUTIERREZ and co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail

7

(email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Telephone #1** and **Target Telephone #2** described herein.[1]

## METHODOLOGY

18. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect

---

[1] Given the post-arrest statement of COVARRUBIAS and the information proffered by GUTIERREZ, searches of Subject Telephone #1 and Subject Telephone #2 will likely yield evidence to substantiate or rebut their defense that they were committing a different crime – smuggling pharmaceuticals into Mexico from the United States.

8

the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19. Following the issuance of this warrant, I will collect **Target Telephone #1** and **Target Telephone #2** and subject them to analysis. All forensic analysis of the data contained within the telephones and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

20. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

21. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that COVARRUBIAS and GUTIERREZ used **Target Telephone #1** and **Target Telephone #2** to facilitate the offense of alien smuggling. **Target Telephone #1** and **Target Telephone #2** were likely used to facilitate the offense by transmitting and storing data, which constitutes evidence, fruits, and instrumentalities of violations of Title 8, United States Code, Section 1324.

22. I also believe that probable cause exists to believe that evidence, fruits and instrumentalities of illegal activity committed by COVARRUBIAS and GUTIERREZ continues to exist on **Target Telephone #1** and **Target Telephone #2**.

23. Based upon my experience and training, consultation with other agents in alien smuggling investigations, consultation with other sources of information, and the facts set forth herein, I know that the items to be seized set forth above in

9

Paragraph 3 are likely to be found in the property to be searched described above in Paragraph 1. Therefore, I respectfully request that the Court issue a warrant authorizing me, an Officer with U.S. Customs and Border Protection, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachment A, and seize the items listed in Attachment B.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Carlo Nazareno, CBP Officer
U.S. Customs and Border Protection

Subscribed and sworn to before me this __23__ day of April 2019.

_____
HON. MITCHELL D. DEMBIN
United States Magistrate Judge

10

## ATTACHMENT A
## PROPERTY TO BE SEARCHED

The property to be searched in connection with an investigation of violations of Title 8, United States Code Section 1324, is described below:

(1) Apple cellular telephone
Model: iPhone 7 Plus
Serial: F2LTHZVYHX9F
IMEI: 355842086675259

(2) Apple cellular telephone
Model: iPhone 8 Plus
Serial: F19WL22PJWLK
IMEI: 356110090999506

Currently in the possession of the Department of Homeland Security, United States Customs and Border Protection, 9495 Customhouse Plaza, San Diego, CA 92154.

# ATTACHMENT B
## ITEMS TO BE SEIZED

Authorization to search the cellular telephones described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones. The seizure and search of the cellular telephones will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period of December 9, 2018 through December 29, 2018:

a. tending to indicate efforts to smuggle undocumented aliens from Mexico to the United States or smuggle undocumented aliens further into the interior of the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, phone numbers that may contain electronic evidence tending to indicate efforts to smuggle undocumented aliens from Mexico to the United States or smuggle undocumented aliens further into the interior of the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in smuggling illegal aliens from Mexico to the United States or smuggling undocumented aliens further into the interior of the United States;

d. tending to identify travel to or presence at locations involved in smuggling undocumented aliens from Mexico to the United States or smuggling undocumented aliens further into the interior of the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject phone; or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above

**which are evidence of violations of Title 8, United States Code, Section 1324.**
The seizure and search of the cellular phone(s) shall follow the procedures outlined in the supporting affidavit. Deleted data, remnant data, slack space, and temporary and permanent files on the cellular phone(s) may be searched for the evidence above.